IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BOSTON, | ) | |
| Petitioner | ) ) ) | Civil Action No. 04-51 Erie Judge Sean J. McLaughlin |
| v. | ) ) | Magistrate Judge Baxter |
| JOHN ASHCROFT, | ) ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

McLAUGHLIN, SEAN J.

Petitioner, Robert Boston, filed a habeas corpus application under 28 U.S.C. § 2241(Dkt. #1) on October 8, 2003. Petitioner's habeas petition contends that he should be awarded credit against his federal sentence for certain time that he spent in state custody.

**I.   Background**

On July 27, 2005, the Magistrate Judge recommended that we grant the petition as to the time Petitioner spent in state custody between November 24, 1999 and April 1, 2003. (Dkt. #18) Subsequently, the government filed objections to the report and recommendation. (Dkt. #19). Petitioner filed a reply (Dkt. #20), and the government filed a sur-reply (Dkt. #21). This matter is now ripe for review.

As a preliminary matter, we adopt and incorporate herein the Magistrate Judge's summation of the factual and procedural history of this case  (Report and Recommendation, pp. 1-3).  Stated briefly, Petitioner was arrested by Wisconsin state officials for possession of a firearm on February 2, 1999, but no state charges were filed.  Instead, federal charges against Petitioner as a felon in possession of a firearm were filed on February 5, 1999.  Petitioner continued to be held by the state of Wisconsin throughout the federal proceedings, which culminated in a guilty plea on April 23, 1999.

Simultaneously, the same weapons possession activity served as the basis for the revocation of parole by Wisconsin authorities on May 5, 1999.  Wisconsin authorities directed that Petitioner

serve 2 years, 1 month and 20 days incarceration for violating his parole from a 1990 state drug conviction.

On November 3, 1999, Petitioner was sentenced in federal court to a period of 162 months incarceration on the felon in possession charge, with that sentence to run consecutive to the state sentence. The federal sentence was later reduced to 145 months. On or around November 24, 1999, Petitioner was transported to a federal facility and began to serve his federal sentence. Soon afterwards, however, officials at FPC Oxford determined that Petitioner was under the primary jurisdiction of the state of Wisconsin. He was then returned to Wisconsin custody and remained incarcerated in a Wisconsin facility until April 1, 2003, at which time he was paroled to a federal detainer.

All of the time Petitioner spent in custody between February 2, 1999, and April 1, 2003, has been credited against his state sentence. The issue is whether, as the Magistrate Judge recommended, Petitioner is entitled to credit against his federal sentence for the period of custody from November 24, 1999, and April 1, 2003. The Bureau of Prisons has computed Boston's sentence as commencing on April 1, 2003.

## II.    Analysis

In computing a federal sentence, two separate issues must be considered. First, the commencement date of the federal sentence must be determined, and, second, the extent to which a defendant can receive credit for time spent in custody prior to commencement of sentence must be established. Chambers v. Holland, 920 F.Supp. 618, 621 (E.D. Pa.), *aff'd.*, 100 F.3d 946 (3rd Cir. 1996).

A federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Thus, a federal sentence does not commence until a prisoner is actually received into federal custody for that purpose. McCarthy v. Doe, 146 F.3d 118, 122 (2nd Cir. 1998); Barden v. Keohane, 921 F.2d 476 (3rd Cir. 1990). By order of the federal sentencing court, Petitioner's federal sentence was directed to run consecutively to the pending state sentence for violating his parole. Here, we conclude that the federal sentenced

commenced on November 24, 1999.

The Magistrate Judge, relying on Weekes v. Fleming, 301 F.3d 1175 (10th Cir. 2002), and our previous decision in Bond v. LaManna, Doc. No. 02-302 (W.D. Pa. 2004)[1], held that Petitioner's federal sentence, which began to run on November 24, 1999, was not interrupted by his transfer to state custody. In arriving at that recommendation, the Magistrate Judge adopted the analysis in Weekes relevant to a defendant's right to continuous, uninterrupted service of a federal sentence. Consequently, the Magistrate Judge concluded that, once Petitioner's federal sentence commenced, that sentence was not interrupted by Petitioner's transfer to state prison. We disagree.

In Weekes, the defendant was arrested on drug charges by state authorities on April 20, 1994, and charges were filed. He was then taken into federal custody on May 16, 1994, and pending state charges were thereafter dismissed, leaving only the federal charges against him. Weekes was transferred back to state custody on May 25, 1994, to appear for a probation violation proceeding. His state probation was revoked, and he was sentenced to 2 to 5 years imprisonment by the state authorities. Weekes was then returned to federal custody and received a sentence of 188 months incarceration on the federal charges. Weekes, 301 F.3d at 1177-78.

Weekes was designated to begin serving his federal sentence on February 21, 1995, and he was received at FCI Lompoc on March 24, 1995. After his arrival at FCI Lompoc, BOP staff determined that Weekes' federal sentence was intended to be served consecutively to his state sentence. Thus, Weekes was transferred from his designated federal institution to state custody. This occurred on April 20, 1995. Weekes was released by the state and given back into federal custody on April 18, 1999. In calculating Weekes' federal sentence, the BOP did not give Weekes credit for any of the time spent in state custody. Id.

The Court of Appeals for the Tenth Circuit determined that Weekes' federal sentence "commenced" upon, and continued to run from, his designation for assignment to FCI Lompoc on February 21, 1995, since the federal authorities had primary custody over Weekes at the time the federal sentence was imposed. Id. at 1181. The Court then addressed the question of whether "the United States may interrupt the service of a federal sentence without giving the federal prisoner

---

[1] After further reflection, and for reasons set forth more fully in this opinion, we are of the view that our previous reliance on Weekes was misplaced.

credit on that federal sentence." Id. at 1180.  Recognizing the general rule that "unless interrupted by fault of the prisoner . . . a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it," the Court held that, because Weekes had been under the primary custody of the federal government when he began serving his federal sentence, the federal government made a mistake in returning him to state authorities. Id. (citing Dunne v. Keohane, 14 F.3d 335, 336 (7th Cir. 1994)).  Thus, although both of the sentencing judges intended for Weekes to serve his sentences consecutively, the Tenth Circuit relied upon the "continuous service" rule to credit Weekes with federal time served for his stay in state prison.  Id. at 1181-82.

Other courts have not enforced the continuous service rule so strictly.  In Free v. Miles, 333 F.3d 550 (5th Cir. 2003), the Fifth Circuit addressed a similar situation to that presented in Weekes, Bond, and the case at bar.   In Free, the Petitioner, who had been serving a state sentence, was transferred to federal authorities by way of a writ of habeas corpus ad prosequendum to be sentenced on federal charges.[2]  Following sentencing, Free was immediately sent to a federal facility, where he remained for 6 months.  At that time, federal officials realized that they had made a mistake and that Free should have been returned to the Texas Department of Corrections to complete his state sentence before starting to serve his federal sentence.  Free then filed a habeas corpus petition asserting that, because his federal sentence had "commenced" on the date that he had originally - and erroneously - been delivered to the federal facility, his federal sentence should be credited with all the time served after that date, including the two years he spent in state prison.  Free relied upon the same argument proffered in Weekes and Bond, to wit, that a prisoner is entitled to time served when he is incarcerated discontinuously through no fault of his own.

The Fifth Circuit, rather than treating the continuous service doctrine as a bright line rule, adopted a flexible approach based upon the purpose of the rule, that being "to prevent the government from abusing its coercive power to imprison a person by artificially extending the duration of his sentence through releases and re-incarcerations." Free, 333 F.3d 554.  Specifically,

---

[2] We recognize that the fact that Free was "borrowed" from the state renders his procedural posture different from that of Weekes or Boston, both of whom were under the primary jurisdiction of federal authorities.  Nonetheless, we find the rationale and policy underlying the Free decision to be more persuasive than that of Weekes.

the Court looked at the intention of the sentencing judges to impose consecutive sentences and held that the continuous service rule did not apply because "[i]t [was] apparent from the record that Free's *total* time of incarceration in both federal state prisons has *not* been – and will not be – increased by even a single day as a result of his mistakenly serving the first six months of his federal sentence prior to completing the service of his state sentence." Id. at 555.  The Court concluded that it was "of no moment" that Free served his sentence "in two shifts between sovereigns rather than one" because he ended up serving "the correct total time of his *consecutive* state and federal sentences." Id.  This approach prevents the continuous service rule from becoming a "get out of jail early" card for prisoners.  Id.

This approach has been utilized by other courts in analogous situations.  In Cox v. United States, 551 F.2d 1096 (7th Cir. 1977), for example, a prisoner began serving a federal sentence, was returned to state officials when his state appeals failed, and then returned to federal prison to resume his consecutive sentence.  The Seventh Circuit held that:

> Insofar as interruption of plaintiff's federal sentence postponed the date on which he would ultimately complete his imprisonment, it was entirely consistent with the consecutive nature of the sentence imposed . . . The fact that plaintiff's state sentence had been suspended pending the outcome of his collateral attack may not serve to defeat the federal trial judge's power to impose a consecutive sentence.  We therefore hold that a plaintiff's interrupted federal sentence did not constitute punishment by installments in violation of the common law rule.

Cox, 551 F.2d at 1099.  See also Cox v. Federal Bureau of Prisons, 643 F.2d 534, 537 (8th Cir. 1981) (same); Dunne v. Keohane, 14 F.3d 335, 336-37 (7th Cir. 1994) (recognizing that, where a prisoner's federal sentence is interrupted by a stint in state prison, rather than a release into the free community, there is no "postponement" of the federal sentence; therefore, the rule against piecemeal incarceration is not violated); Sanders v. Keohane, 577 F.2d 62 (6th Cir. 1989) (holding that an interruption of a prisoner's federal sentence to serve a state sentence did not constitute a retroactive enhancement of the sentence, as the sentences were imposed consecutively, and the prisoner's overall prison time remained the same); Stroble v. Connor, 2005 WL 2175161 (D. Kan. 2005) (adopting the rule in Free and thus declining to apply the continuous service rule where a prisoner's overall period of incarceration is not extended beyond that contemplated by the sentencing courts); Burns v. Tapia, 2005 WL 2105983 (W.D. La. 2005) (same).

As evidenced by the record, Petitioner's period of incarceration has not been extended in any way due to the erroneous transfer to state custody. Rather, he is serving multiple, consecutive sentences, as ordered by the sentencing courts. Moreover, we agree with the admonishment in Free that the continuous service rule should not operate as a "get out of jail early card." Therefore, we find that relief is inappropriate.

### III. Conclusion

For the reasons state above, we REJECT the Magistrate Judge's report and recommendation (Dkt. #18) as to Petitioner's allegation that he is entitled to credit for time served between November 24, 1999, and April 1, 2003. Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. #1) is hereby DISMISSED.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT BOSTON, ) | |
| ) | |
| Petitioner ) | Civil Action No. 04-51 Erie |
| ) | Judge Sean J. McLaughlin |
| v. ) | Magistrate Judge Baxter |
| ) | |
| JOHN ASHCROFT, ) | |
| ) | |
| Respondent. ) | |

**ORDER**

AND NOW, this 2nd day of December, 2005, for the reasons set forth above, it is hereby ORDERED that the Magistrate Judge's report and recommendation is REJECTED and Petitioner's Petition for Writ of Habeas Corpus is DENIED.

/s/ - Sean J. McLaughlin
United States District Judge

cm:   All parties of record.