**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-5397
_____

ROBERT BOSTON,

Appellant

v.

ATTORNEY GENERAL OF THE UNITED STATES;
Warden JAMES SHERMAN

_____

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 04-cv-00051E)
District Judge:  Honorable Sean J. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
October 18, 2006

Before: Rendell, Ambro and Roth, <u>Circuit Judges</u>

(Filed:  December 21, 2006)

_____

OPINION
_____

PER CURIAM

Robert Boston appeals from the denial of his § 2241 petition by the United States

District Court for the Western District of Pennsylvania.  We will vacate that order and

remand for proceedings consistent with this opinion.

I.

Boston was arrested by Wisconsin state officials on February 2, 1999; no state charges were filed as a result. Instead, on February 5, 1999, federal charges were filed against Boston, for firearms possession violations pursuant to 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Boston was ordered detained by a federal magistrate judge on February 22, 1999, and he continued to be held by the State of Wisconsin through the federal criminal proceedings. On April 23, 1999, Boston pled guilty to the federal charges; his sentence was not immediately imposed.

The same weapons possession served as the basis for the revocation of parole by Wisconsin authorities on May 5, 1999. Boston began serving his state sentence immediately.

On November 3, 1999, Boston was sentenced on his federal conviction to 162 months in prison (later reduced to 145 months), to be served consecutive to the state sentence. On November 24, 1999, Boston was designated for assignment to a federal facility, FPC/FCI Oxford, and he arrived there several days later. Shortly after Boston's arrival, FCI Oxford staff concluded that Boston should have been under the primary jurisdiction of the State of Wisconsin and returned him to state custody. Boston remained in a Wisconsin facility until April 1, 2003, when he was paroled to a federal detainer.

The entire time period that Boston spent in custody – February 2, 1999 through April 1, 2003 – was credited against his Wisconsin state sentence. The Bureau of Prisons

computed Boston's federal sentence as commencing on April 1, 2003.

Boston filed a habeas petition pursuant to 28 U.S.C. § 2241, in the Western District of Pennsylvania, contending that he should be awarded credit against his federal sentence for all the time he spent in federal custody prior to April 1, 2003. The Magistrate Judge recommended that Boston receive federal credit for the time from November 24, 1999, when he was designated to FCI Oxford, to April 1, 2003. The District Court disagreed and dismissed Boston's § 2241 petition. Boston now appeals.

II.

This Court has jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's legal decisions, and apply a clearly erroneous standard to the court's factual findings. Wilson v. Beard, 426 F.3d 653, 659 (3d Cir. 2005). We can affirm the District Court's order on any ground supported by the record. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).

In order to determine whether Boston is entitled to any federal credit for his time in custody, we must first determine the commencement date of his federal sentence. 18 U.S.C. § 3585(a) provides:

> A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

Id. Both the Magistrate Judge and the District Court concluded that Boston's federal sentence commenced on November 24, 1999, the day he was designated for assignment

3

to FCI Oxford. We agree.[1] The record is clear that Boston was designated on that date and subsequently transferred to the federal facility, where he remained for several days. See Weekes v. Fleming, 301 F.3d 1175, 1177, 1179 (10th Cir. 2002). Contra Binford v. United States, 436 F.3d 1252, 1253 (10th Cir. 2006) (sentence did not commence where prisoner in temporary federal custody pursuant to writ of *habeas corpus ad prosequendam*). In support of its contention that the federal sentence did not commence until April 2003, the government presents several reasons why Boston should not receive "double credit" for the time period between November 1999 and April 2003. However, such arguments do not speak to the straightforward determination, under 18 U.S.C. § 3585(a), of the commencement of the federal sentence.

Next, we must necessarily evaluate how long the federal sentence ran. Within a few days after Boston's arrival, federal officials realized their mistake and arranged to have Boston transferred back to a Wisconsin state facility. Boston contends that under the common law "continuous service rule," his federal sentence should have continued to run, regardless of his return to state custody. The rule provides that "unless interrupted by fault of the prisoner . . . a prison sentence runs continuously from the date on which the defendant surrenders to begin serving it." Weekes, 301 F.3d at 1180 (citing Dunne v.

---

[1] In its brief, the government contends that the District Court's explicit statement, "we conclude that the federal sentence[] commenced on November 24, 1999", is a typographical error. Boston v. Ashcroft, No. Civ. A. 04-51-ERIE, 2005 WL 3278001, at *2 (W.D. Pa. Dec. 2, 2005). We see no reason to conclude that the District Court did not intend the statement. Despite the government's contentions, it does not follow from finding November 24, 1999, to be the correct commencement date that Boston is entitled to federal credit for all of the time served afterward.

Keohane, 14 F.3d 335, 336 (7th Cir. 1994)). On this basis, the Magistrate Judge recommended that Boston's petition be granted.

However, courts have not followed this rule without exception.[2] As the District Court noted, the danger that the rule protects against is that the government might abuse its coercive power to imprison a person and artificially extend the duration of the sentence by continuously releasing and then re-incarcerating the prisoner. See Free v. Miles, 333 F.3d 550, 554 (5th Cir. 2003) (per curiam); see also Dunne, 14 F.3d at 336 (government is not permitted to delay expiration of sentence by postponing commencement of sentence or by releasing prisoner for a time and then reimprisoning him). Where a prisoner's total time of incarceration in both federal and state prison will not be increased as a result of his mistakenly serving a portion of the federal sentence before completing his state sentence, the central concern of the rule is not invoked. Several courts have concluded that, where the danger animating the rule is not present, the common law rule need not be inflexibly applied. See Free, 333 F.3d at 554-55 (refusing to grant federal credit to prisoner for time spent in state custody after serving six months of federal sentence because "[prisoner] is serving the correct total time of his consecutive state and federal sentences"); Cox v. United States, 551 F.2d 1096, 1099 (7th Cir. 1977) (not awarding federal credit for time in state custody after commencement of consecutive federal sentence because prisoner "was no more deprived of his ultimate expectation of freedom

---

[2] This is consistent with the status of a common law rule. See Dunne v. Keohane, 14 F.3d 335, 336 (7th Cir. 1994) (continuous service rule "is only a rule of interpretation . . . laden with considerations of policy" and "not a constitutional command").

by interruption of his federal sentence than if he had been turned over to [state] authorities immediately after [federal] sentence was imposed to complete the service of his state sentence"). But see Weekes, 301 F.3d at 1180 (presuming rule's applicability without evaluation).

    Here, the federal sentencing court specified that Boston's federal sentence was to run consecutively to the state sentence. Accordingly, if Boston does not receive federal credit for the period of time he spent in state custody after serving briefly in federal custody, there is no danger that he will serve more than the correct total time of his state and federal sentences. Boston's claim that, without the federal crediting, his sentence will be increased because the state intended for his state sentence to run concurrently with his federal sentence is unavailing. Even assuming that the state's eventual decision to credit the brief amount of time Boston spent in a federal facility is properly interpreted as evidence of the state's intent to impose a concurrent sentence, Boston would not be entitled to have his sentences run concurrently. See, e.g., Barden v. Keohane, 921 F.2d 476, 480-84 (3d Cir. 1990) (state sentencing judges have authority to direct that a state sentence be concurrent with a federal sentence, but lack authority to direct that a federal sentence run concurrent with a state sentence); Taylor v. Sawyer, 284 F.3d 1143, 1150 (9th Cir. 2002) (concurrent sentences imposed by state judges are nothing more than recommendations to federal officials).

    Having established that we need not conclude that, due to the common law rule, Boston's federal sentence necessarily ran throughout the entire time he was in state

custody (beginning in December 1999), we must now determine how long it did run. The government would have us conclude that it did not run at all, pursuant to the statutory provision which allows a prisoner to be given credit toward his federal sentence only for time he has spent in official detention that *has not been credited against another sentence.* See 18 U.S.C. § 3585(b) (emphasis added). Since Boston received credit on his state sentence from his arrest on February 2, 1999, through his re-parole to the federal detainer on April 1, 2003, the government urges that the statute does not allow for double credit. However, § 3585(b) applies only to time "prior to the date the sentence commences." Id. As we have already concluded that Boston's federal sentence commenced on November 24, 1999, § 3585(b) prevents Boston from receiving federal credit only for the time from his initial arrest until that point. The District Court used its conclusion *not* to apply the continuous service rule to explain why it determined Boston was not entitled to any federal credit. However, this conclusion rests uneasily with the District Court's correct finding that Boston's federal sentence commenced on November 24, 1999. According to the District Court's analysis, Boston's federal sentence began, but never ran. Put another way, in the District Court's view, Boston does not receive federal credit for any of the time he served (1) in federal prison, (2) immediately following his assignment to and transfer to a federal facility.

     This awkward result is not dictated by a decision not to apply the common law rule. Nor are we aware of any authority indicating that the sentencing judge's intention that Boston's federal sentence be served consecutively to his state sentence dictates that

7

the federal sentence time that Boston served at a federal facility should be erased when state authorities later award state credit for that time. We conclude, then, that Boston should receive credit against his federal sentence for the time he served in federal custody until the time of his transfer back into state custody. Cf. Free, 333 F.3d at 555 (prisoner entitled to federal credit for the six months served in error at federal facility before being correctly returned to serve at state facility).

Because it is clear that the Bureau of Prisons has not credited this time to Boston's federal sentence,[3] Boston's § 2241 petition should be granted for the purpose of giving him federal credit for the time period from November 24, 1999, to the time of his transfer back into state custody. Because the date on which Boston returned to state custody is not clear from the record, we will remand for determination on this matter. Boston's claims of entitlement to federal credit for other time periods were correctly rejected by the District Court.

Accordingly, we will vacate the District Court's order and will remand this matter for proceedings consistent with this opinion.

---

[3]See Appellee's Brief at 9.